PROVOSTY, J.
The present proceeding is a rule taken by the State Tax Collector against the defendant company for the recovery of license taxes claimed to be due the state by the defendant company for the years 1907, 1908, 1909, and 1910, because, it is alleged, “said firm is and has been engaged in the business of disposing of alcoholic liquors in less quantities than five gallons continuously during said years at No. 1001 S. Front street, in this city, without having paid any state license for so doing”; its gross receipts in said business from sales in less quantities than five gallons amounting to between $5,-000 and $10,000 per annum.
This license is thus claimed for the years 1907 and 1908 under the Revenue Law of 1898 (Act No. 170 of 1898), and for the years 1909 and 1910 under Act 176, p. 236, of 1908, popularly known as the “Gay-Shattuck Act.”
There is no dispute as to the facts. The defendant company sells foreign wines and liquors from a warehouse in New Orleans in the unbroken package. The package contains three gallons. No sale has been of less than several of these packages; but deliveries of a single package have been made. Some of the goods are imported direct to New Orleans; others go to New York, and are there stored in the Standard Warehouse, and thence transmitted to New Orleans. Whether the goods thus transmitted are originally destined to New Orleans and stop in New York merely in transitu, or are taken for transmission indiscriminately from the stock of goods in the New York warehouse, and how long they remain in New York, or for what reason they go first to New York and not directly to New Orleans, is not shown by the record. All the goods have paid impost duties. The defendant company carried on this business in 1909 and 1910, but not in 1907 and 1908. Its gross annual receipts from said business did not exceed $3,-000 per annum. It has paid internal revenue licenses for those years both as a wholesale and retail dealer, but has paid no license to the state.
[1] Defendant contends that said statute (Act 176 of 1908) has no application to a business such as that which defendant carries on, but only to the business of conducting a barroom or other like place.
*1093 This question was fully considered, and determined adversely to defendant’s present contention, in State v. Pabst Brewing Co., 128 La. 770, 55 South. 349, where it was held that a Milwaukee brewery, which sent its beer to New Orleans and there sold it from a warehouse in the unbroken package, was amenable to the provisions of said act.
[2] Another reason assigned by defendant why said license is not due is that the sales made in said business have been in greater quantities than five gallons, though some of the deliveries under the sales have been in less quantities.
This contention is but lightly touched upon in the brief — evidently because defendant can have but little faith in it. It is manifestly without merit. When said statute speaks of a place where liquors are sold in quantities of less than five gallons, it evidently does not mean the place where the contract of sale is entered into, but where the delivery is made. Such a law as this concerns itself little with the contract, apart from the delivery; it is the delivery that is the thing. It is that which must be in less quantity than five gallons.
[3, 4] Another contention is that said statute, if applicable to defendant’s business, is null, as interfering with interstate commerce.
That point, too, was disposed of in said case of State v. Pabst Brewing Co.
But defendant contends that said decision, even if correct, cannot control the present case for the reason that it is based on the Wilson Act (Act of Congress Aug. 8, 1890, c. 728, 26 Stat. 313 [U. S. Comp. St. 1901, p. 3177]); and that said act has reference only to liquors “transported” into a state, and not to liquors “imported” into a state; and that all the liquors sold by defendant were imported. In support of that contention, defendant argues that the word “imported” has a well-defined legal meaning, and is “the act of bringing goods and merchandise into the United States from a foreign country” (Bouvier Law Diet. [Rawle’s Ed.] verbis Imported, Importation); that this meaning is not conveyed by the word “transported,” made use of in the Wilson Act; that Congress well knew the difference in meaning between the two words, and used the word “transported” advisedly, and would never have consented to allow the states to tax imports of liquors, enabling them by heavy taxes to shut out imports, and thereby deprive the government of an important source of revenue; and that the Supreme Court of the United States, in the case of Delamater v. South Dakota, 205 U. S. 93-98, 27 Sup. Ct. 447, 51 L. Ed. 724, 10 Ann. Cas. 733, recognized this distinction when it said that:
“The Wilson Act adopted a special rule enabling the states to extend their authority to such liquors shipped from other states.”
There is absolutely nothing to show that the court meant here to intimate that liquors brought from a foreign country would not come under the Wilson Act.
As to what Congress would have consented, or not consented, to do, none can say; and, if we come to conjecturing, it is hardly to be supposed that Congress would adopt such a halfway, futile, and useless measure as to allow the states to protect themselves against liquors coming from other states, while denying them the same right as to liquors coming: from foreign countries. Would, for instance,, allow protection to Texas against liquors coming from Louisiana and Oklahoma, but none against liquors from Mexico. Congress is not addicted to making Dead Sea apple gifts, or to discriminating thus rankly against native producers of any article of commerce, in favor of foreign producers.
Moreover, the Wilson Act uses also the term “introduced therein”; and, most unquestionably, the goods in question were “introduced” into this state.
Clearly, this argument sought to be based *1095 upon the difference in meaning between the words “imported” and “transported” is without merit.
[5] Defendant contends that the Wilson Act, if construed to authorize the states to impose taxes upon imports, becomes obnoxious to Article 1, § 10, of the Constitution of the United States, that:
“No state shall, without the consent of Congress, lay any impost or duties on imports or exports, except what may be absolutely necessary for executing its inspection laws.”
Suffice it to say, in answer to this, that this constitutional provision has reference only to such state taxes as may be attempted to be laid upon imports without the consent of Congress, and has no reference to state taxes laid with the consent of Congress.
[6] However, if the interpretation of the Wilson Act contended for by defendant were accepted, the license in question would still be due; since a part of the goods sold by defendant were not imported direct, but were transmitted to Louisiana from the stock of goods stored in the warehouse in New York, and forming part of the general mass of property in the state of New York. Nothing in the record shows that these goods were warehoused in New York while in transit, and not after they had terminated their importation voyage. In other words, that they were shipped direct to New Orleans, via New York, and not simply to New York. No reason is assigned and no suggestion made why these goods should have been stopped and warehoused in New York if originally destined to New Orleans. So far as the evidence shows, therefore, the goods were merely “transported” from New York to this state. But even where goods are intended for transmission and are stored merely temporarily, they become a part of the general mass of property of the state where stored. Brown v. Houston, 114 U. S. 622, 5 Sup. Ct. 1091, 29 L. Ed. 257; Merchants’ Transfer Co. v. Board of Review, 128 Iowa, 732, 105 N. W. 211, 2 L. R. A. (N. S.) 662, 5 Ann. Cas. 1016, and cases cited in note. Also, Lehigh Coal Co. v. Borough, 75 N. J. Law, 922, 68 Atl. 808, 15 L. R. A. (N. S.) 514. So that, even if said goods were originally intended for New Orleans and were stored in New York only temporarily, their transmission to New Orleans was a “transportation” and not an “importation” into Louisiana, according to the meaning attributed to these two words by defendant.
It is therefore ordered, adjudged, and decreed that the Judgment appealed from be set aside, and that the rule herein be made absolute, and that the defendant Frederick De Bary & Co. be condemned to pay the state of Louisiana $200 for a state license for the year 1909, with 2 per cent, per month thereon from the 1st day of March, 1909, and $200 for a state license for the year 1910, with 2 per cent, per month interest thereon from the 1st day of March, 1910, plus 10 per cent, as attorney’s fees on the whole of the present Judgment, and that the defendant pay all costs.