(60 South. 691.)

No. 19,740.

STATE ex rel. BOSTON CLUB OF NEW ORLEANS v. FITZPATRICK, State Tax Collector.

(Jan. 20, 1913.)

*(Syllabus by the Court.)*

1. INTOXICATING LIQUORS (§ 50*)—LICENSES —REGULATION—SOCIAL CLUBS.

It is a matter, partly of admission in this case and otherwise, of common information, that the social club now before the court, and other similar organizations, occupy, and have for generations occupied, a most prominent position in the life of this city and state; that their homes, whilst usually valuable and ornamental, are as innocuous to the general public, which is excluded from them, as well-kept mausoleums; and, as the lawmakers are as familiar with those conditions as is the community at large, it is reasonable to assume that, if they had intended to impose upon the members of those organizations all the restrictions which are imposed upon persons desiring to establish barrooms, cabarets, and other such places of "business," they would have found appropriate language in which to express that purpose.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. § 51; Dec. Dig. § 50.*]

2. INTOXICATING LIQUORS (§ 50*)—SALE—LICENSES—REGULATION.

Section 8 of Act 176 of 1908 cannot, according to its terms or under any known canon of interpretation, be applied to relator, and hence relator is under no obligation to comply with its requirements as a condition precedent to the obtention of a state license for the sale of liquors at a prospective clubhouse, situated within 300 feet of a religious institution and of an educational institution, where children are taught.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. § 51; Dec. Dig. § 50.*]

Appeal from Civil District Court, Parish of Orleans; Porter Parker, Judge.

Mandamus by the State on relation of the Boston Club of New Orleans against John Fitzpatrick, State Tax Collector, to compel defendant to issue a license to relator for the sale of liquors on certain premises in New Orleans. From a judgment denying the writ, relator appeals. Reversed, and writ granted.

Joseph W. Carroll, Chas. P. Fenner, and H. Generes Dufour, all of New Orleans, for appellant. Edward Rightor and W. W. Westerfield, both of New Orleans, for appellee.

MONROE, J. This is an appeal from a judgment denying to relator a writ of mandamus directing the respondent, tax collector, to issue a license for the sale of wines and liquors upon certain premises in this city.

The petition alleges, in substance, that re-

lator is a social club which has existed for more than 60 years, and is operating, under a charter and the by-laws and rules adopted pursuant thereto, solely for the social and intellectual enjoyment of its members; that it has no stock or stockholders, and is not engaged in any business or organized for any purpose of business or of making or earning money, but is maintained solely through the contributions of its members, resident and nonresident, in the way of initiation fees and annual dues; that the use of its clubrooms is strictly private, being confined to a limited number of members and such nonresident guests as may be introduced by the members, for limited periods; that it furnishes its members with wines, alcoholic and malt liquors, and lunches, and makes a charge therefor, but does so at a loss to itself, the amount received being insufficient to pay the expenses; that for many years it has been located at No. 824 Canal street in this city, but has recently leased the premises No. 555 St. Charles street in order to enable it to conduct said club in substantially the same manner as heretofore; that it applied to the respondent, State Tax Collector, for a license for the year 1913 for the sale, or other disposition, to its members and guests, on said premises last mentioned, of wines and liquors, under the revenue provisions of Act No. 176 of 1908, and tendered the sum of $400 therefor, based upon an affidavit of its president as to its receipts from such sources for the year 1912, and that said respondent refused to accept said tender or to issue such license on the ground that relator had not produced a "permit" from the city of New Orleans agreeably to the provisions of section 8 of said statute; that said section 8 applies, neither in terms nor in spirit, to the club conducted by relator; and that the action of respondent is therefore illegal, and amounts to a denial of relator's right in the premises. It alleges that the matter at issue involves more than $2,000, and it prays for a writ of mandamus directing the respondent to accept the $400 and issue the license. There is an affidavit by relator's president filed with the petition, in which the affiant says, inter alia:

"That said club desires a license, for the year 1913, at the proposed new club building, * * * to sell or otherwise dispose of wines and alcoholic and malt liquors and alcoholic drinks of all kinds to its members, and duly invited and introduced nonresident guests, as a social club dispensing such only to its members and guests; that said club does not design to make, and does not, in fact, make, any profit upon the sale or other disposition of such wines and * * * drinks, but is a social club, with strict requirements as to choice and election of members and introduction of nonresident guests, and is not engaged in the business of conducting a barroom, cabaret, coffee house, café, beer saloon, liquor exchange, drinking saloon, grog shop, beer house, or beer garden'; but that it does dispense wines and alcoholic and malt liquors and alcoholic and malt drinks to its members and a limited number of regularly invited and introduced nonresident guests," etc.

Respondent admits the truth of all the allegations of the petition, except those propounded in the eighth and ninth articles, wherein it is said that section 8 of Act 176 of 1908 has no application to the club conducted by relator, or to the disposition of wines and liquors, as made by it; that respondent's refusal to issue the license asked for is illegal and arbitrary; and that relator is entitled to the writ of mandamus; and respondent, further answering, avers:

"That relator, like all other persons or institutions that sell or dispose of alcoholic liquors for consumption upon the premises, is subject to the provisions of Act 176 of 1908, and particularly section 8 thereof; that the affidavit, a copy of which is attached to relator's petition herein, and the original of which witnesses relator's application for a liquor license for the retailing and consumption of intoxicants upon the premises No. 555 St. Charles street, alleges that said club contemplates there establishing a café and drinking saloon; that, under section 8 of Act 176 of 1908, such institution can only be legally operated with the express permission of the council of the city of New Orleans; and that, under the third paragraph of said section, said council may not grant a permit for the opening of a café, drinking saloon, or other place where intoxicants are sold or disposed of, for consumption on the premises, within 300 feet of any church or

of a school where children are taught; and that within 300 feet of said premises, No. 555 St. Charles street, upon the city hall side, there has for years existed, and there now exists. Soule's College, a school where children are taught; and that, on the side of said property on Carondelet street, and almost adjoining its rear, there now stands the Chevra Thelin, 'Union of Psalms,' a Hebrew religious and educational institution, wherein divine worship is regularly held, and in which children are regularly taught."

Respondent, therefore, prays that relator's application be denied.

[1] This case enjoys the distinction of being the first to be submitted in this court in which the pleadings are prepared in conformity to Act 157 of 1912, being "An act to further regulate the pleadings and practice in civil causes," etc., and the petition and return are therefore articulated and verified. The facts, as to the proximity to relator's proposed clubhouse of the educational and religious institutions mentioned in the return, are admitted; the institution last mentioned (so the admission runs) occupying the upper floor of a building erected for commercial purposes, and the lower floor of which is used for those purposes. We have also the sworn admission that relator is engaged in no business whatever, which, as a conclusion of law as well as fact, is supported by at least two decisions of this court; the one rendered in 1895 in the case of State v. Boston & Pickwick Clubs, 45 La. Ann. 585, 12 South. 895, 20 L. R. A. 185, the other, rendered in 1906, in the case of State v. N. O. Chess, Checkers & Whist Club, 116 La. 46, 40 South. 526. The case first mentioned was a proceeding to enforce payment by the defendant clubs (one of which is now before the court) of licenses for the sale of liquors, and it was held that although they were social clubs, not engaged in business, whether the business of selling liquors or otherwise, they were nevertheless selling liquors, and, under certain provisions of the then existing law, were liable for the license tax imposed

upon persons, etc., so engaged. In the case last mentioned, the state sought to compel the Chess Club to pay additional amounts, alleged to be due upon licenses for past years, upon the ground that supplies, other than liquors which had been furnished to the members, had not been included in calculating the gross revenues for those years, and the question whether the club was engaged in business was revived. In deciding the case, the court said:

"We also concur in the opinion of the trial judge that, as decided in the Boston & Pickwick Club Cases, 45 La. Ann. 586, 12 South. 895, 20 L. R. A. 185, the conducting of a social club is not the carrying on of a business, trade, or occupation, in the sense of the license statute of this state. * * * In the case cited, the court so held as to other social clubs conducted on the same lines, and defendants therein were not adjudged liable to a license tax for carrying on such a business, but for conducting 'an establishment selling or giving away or otherwise disposing of intoxicating liquors.' Therefore, if the defendant club is taxable for license purposes, only quoad the gross sales of such liquors, the sales of other articles cannot be considered in determining the basis of license taxation."

The General Assembly convened within a few months after the opinion thus quoted was handed down, and passed an act (No. 148 of 1906), section 5 of which was probably intended to cover the case; that section reading:

"Section 5. * * * That all social clubs, selling or disposing of intoxicating liquors, shall be classified under section 13 of Act 171 of 1898, and shall be therein graded in the same manner as all other concerns graded therein, and their gross annual receipts for the purpose of determining the quantum of their licenses shall be estimated in the same manner."

Act 176 of 1908 is a general act for the regulation and licensing of the liquor traffic in those portions of the state where, in the exercise of local option, such traffic is not prohibited. It is manifestly intended as a police regulation; but whether its provisions are to be regarded merely as the means to that end, or as intended to serve the double

purpose, the act operates also, and very effectively, as a revenue producer.

The first paragraph of section 1 reads as follows:

"That hereafter, for every business of conducting a barroom, cabaret, coffee house, café, beer saloon, liquor exchange, drinking saloon, grog shop, beer house, beer garden, or other place where spirituous, vinous or malt liquors, or intoxicating beverages, bitters or medicinal preparations of any kinds, are sold, directly or indirectly, in quantities of less than five gallons, the license shall be based on the annual gross receipts of said business, as follows, to wit."

And the amounts to be paid for licenses are then graded, on the required basis, into seven classes.

Relator denies that its clubhouse is either a "barroom, cabaret, coffee house, café, beer saloon, liquor exchange, drinking saloon, grog shop, beer house, beer garden, or other place where * * * intoxicating * * * medicinal preparations are sold." And we are of opinion that its denial is sustained by the averments of the petition and the admissions of the return to the effect that it is a private social club, engaged in no business, seeking and making no profits, and (by necessary inference) selling no medicinal preparations. It is, however, further admitted that its present clubhouse is, and its prospective clubhouse will be, a "place," or, in the language of the statute, "other place, where spirituous, vinous or malt liquors, or intoxicating beverages, bitters," are, and will be, sold in quantities less than five gallons; and upon that basis, and without raising the question that it is not conducting and does not propose to conduct a "business" at such "other place," relator concedes its obligation to take out a liquor license.

The question here presented arises, however, under section 8 of the statute—a distinctively police regulation—which provides:

"That any person or firm desiring to conduct a barroom, cabaret, coffee house, café, beer saloon, liquor exchange, drinking saloon, grog ship, beer house or beer garden, and desiring a license to conduct such business in any locality within this state, prior to the issuance to him of any license, * * * shall"

—and then follow provisions, in great detail, to the effect that he must address a sworn petition to the parish or municipal authorities, stating where he wishes to establish his business, who are to be interested in it, the name under which it is to be operated, the names and residences of the parties interested, and that all such persons are of good moral character, and "not disqualified, under the provisions of the act regulating and affecting the sale of intoxicating liquors, from engaging in such business"; that the petition must be accompanied by the affidavits of two reputable citizens, vouching for the truth of its allegations; that notice of the filing of the petition and of its purpose must be published in a daily newspaper for 10 days, or three times in a weekly paper; and that thereafter the authorities shall act on the application, but shall not grant it, in incorporated cities or towns, without the written consent of a majority of the persons owning property within 300 feet of the site selected for the proposed barroom, cabaret, etc., and further that:

"No council or board of aldermen or police jury shall grant any privilege for the opening of any barroom, cabaret, coffee house, café, beer saloon, liquor exchange, drinking saloon, grog shop, beer house, or beer garden, within 300 feet of any church or of any school where children are taught."

It will be observed that the words "or other place where spirituous, vinous or malt liquors, or intoxicating beverages, bitters or medicinal preparations of any kind are sold" (as used in the section requiring the license) are omitted from the above-quoted provision of section 8, so that it is only the person or firm "desiring to conduct a barroom, cabaret," etc., who is required to conform to those provisions in order to establish himself in business. And, reading the whole act together, it is evident that the omission was

deliberately intended. Thus section 10 provides that it shall be unlawful for any person conducting—

"a barroom, cabaret [giving the list of named and specified places, but omitting 'other places'], to use, keep or suffer to be kept in such place any piano, organ, or other musical instrument whatever for the purpose of performing upon or having same performed upon in such places, except in public parks and open air places, of public resort and recreation, and in connection with the service of meals," etc..

That the omission in question was intentional appears equally evident when we consider that there are special laws upon our statute books providing for the establishment of organizations for social and intellectual culture and enjoyment; that it is a matter, partly of admission in this case, and otherwise of common information, that the club now before the court, and other similar organizations, occupy, and have for generations occupied, a most prominent position in the life of this city and state; that their homes, whilst usually valuable and ornamental, are as innocuous to the general public, which is excluded from them, as well-kept mausoleums; and, as the lawmakers are as familiar with those conditions as is the community at large, it is reasonable to assume that, if they had intended to impose upon the members of those organizations all the restrictions which are imposed upon persons desiring to establish "barrooms, cabarets," and other such places of "business," they would have found appropriate language in which to express that purpose.

We have considered the case of State v. Gelpi, 48 La. Ann. 520, 19 South. 468, in which Act No. 18 of 1886, known as the "Sunday Law," was applied to a social club; and, in view of the fact that we are here dealing with a totally different statute, we find no conflict between the conclusion here reached and the conclusion of the court in that case. The cases of State v. Grunewald, 123 La. 527, 49 South. 162, State v. Pabst Brewing Co., 128 La. 770, 55 South. 349, and State v. Frederick De Bary & Co., 130 La. 1090, 58 South. 892, to which also we have been referred by the learned counsel for the respondent, deal with Act 176 of 1908 in certain of its aspects, but neither of them establishes any precedent with respect to the question here presented.

[2] We are of opinion that section 8 of that act cannot, according to its terms or by any known canon of interpretation, be applied to relator, and hence that relator is under no obligation to comply with its requirements as a condition precedent to the obtention of the license which it is here seeking to obtain, and which, therefore, it is the duty of respondent to issue, upon payment of the amount as fixed by law. It is therefore ordered, adjudged and decreed that the judgment appealed from be annulled and set aside, and that there now be judgment in favor of the relator, commanding the respondent to accept from relator the sum of $400, and to issue therefor a state license to sell or otherwise dispose of wines and alcoholic and malt liquors to its members and guests, at the premises No. 555 St. Charles street in this city, for the year 1913. It is further decreed that the respondent pay all costs.